Filed 7/22/14  In re Maya S. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MAYA S., a Person Coming Under the Juvenile Court Law. | B252723 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> A.V., et al., <br><br> Defendants and Respondents. | (Los Angeles County Super. Ct. No. CK96379) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Losnick, Juvenile Court Referee.  Affirmed.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel for Plaintiff and Appellant.

Eva E. Chick, under appointment by the Court of Appeal, for Defendant and Respondent A.V.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Respondent Luis S.

_____

The Department of Children and Family Services (DCFS) appeals the juvenile court's dismissal of a dependency petition concerning Maya S., claiming that the court made a series of erroneous rulings while conducting the hearing on the petition. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.V. is the mother of Maya S., born in 2003, and Luis S. is Maya S.'s father. In 2010, DCFS became involved with the family because of reports that Luis S. had sexually abused A.V.'s two older daughters, I.V. and Amber V., when they were minors. Luis S. admitted to sexually touching both of the older daughters, one when she was 14 years old and one when she was about 18 years old; he also admitted having intercourse with one of the daughters when she was 18 years old.

Upon learning of the sexual abuse, A.V. reported it to the police, threw Luis S. out of the family home, and began the process of filing for full custody of Maya S. Maya S. denied any sexual abuse by her father. A.V. agreed not to leave Maya S. alone with her father. Because of A.V.'s actions, DCFS concluded that she could protect Maya S. from any risk of harm and closed the referral.

In June 2013, DCFS received a referral alleging that A.V. and Luis S. lived together once more and that Maya S. was often left unsupervised in the swimming pool of the apartment complex where they lived. A.V. initially lied to DCFS, stating that Luis S. did not live in the family apartment; but after DCFS discovered evidence that Luis S. lived there and Maya S. reported that she lived with both her parents, the parents admitted that they lived together.

DCFS determined that A.V. had never gone through with the court proceedings to obtain full custody of Maya S. A.V. questioned the credibility of her older daughters because they had given conflicting accounts of the alleged abuse. She acknowledged that it was possible that he had touched them inappropriately, but she believed that he would not abuse his own biological daughter, Maya S. Luis S. had not undergone any treatment relating to sexual abuse.

2

DCFS filed a dependency petition alleging that Maya S. came within the jurisdiction of the juvenile court under Welfare and Institutions Code[1] section 300, subdivisions (b), (d), and (j). Maya S. was detained from her father and released to her mother.

On the day set for the contested adjudication, DCFS had not secured the presence of Maya S.'s older half-sisters in court and orally requested a continuance. The court denied the continuance, and it also denied DCFS's request that the two witnesses be permitted to testify by Skype. The court also refused to receive into evidence some social worker notes and a last-minute information document provided to the court. After hearing evidence and argument, the court dismissed the dependency petition with prejudice. DCFS appeals.

## DISCUSSION

### I.     Denial of Continuance

Section 352 governs continuances in dependency hearings. Continuances must be requested in writing at least two court days prior to the hearing date, unless the court for good cause entertains an oral motion for a continuance. (§ 352, subd. (a).) A continuance may be granted only upon a showing of good cause, and only if it is not contrary to the interests of the minor. (*Ibid.*) In considering the minor's interests, the court is to give weight to the minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. (*Ibid.*) Here, the juvenile court denied DCFS's request for a continuance. We review the decision to deny a continuance for an abuse of discretion (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605), and we find none.

In the present case, DCFS did not file a written request for a continuance, but requested one orally on the day set for the adjudication hearing. Counsel for DCFS stated

---

[1]     All further statutory references are to the Welfare and Institutions Code.

3

that the reason that a continuance was needed was that Maya S.'s older half-sisters, who were described as "crucial to this case," lived at a distance (one in Northern California, and the other in Virginia), and that arrangements needed to be made for them to come to testify. The juvenile court observed that it had been obvious for two weeks that I.V. and Amber V.'s testimony would be required, and asked why this issue had not been addressed when it became apparent that they would be needed to testify. Counsel for DCFS explained that after hearsay objections were made under section 355, subdivision (c), meaning that the half-sisters would be required to appear and testify, she had within "a few days" asked for I.V.'s contact information: "The worker proceeded to contact I[.V.] but did not get her address until yesterday. Amber [V.], as stated in the report, did not return any of the [social worker's] calls" until the day of the hearing.

The juvenile court found that DCFS had failed to establish good cause for the continuance. The need for these witnesses had been clear for some time, the court observed: "We knew back when this petition was filed . . . that these were the only two witnesses, perhaps with the exception of the mother and father. It's plain on its face who the Department would need to file and to sustain this petition. It—it is incredulous for me to imagine that an experienced dependency investigator somehow failed to, while interviewing an extremely important and necessary witness, did not even concern herself with where they were in order to subpoena them in. It is hard to imagine. It is very hard to imagine. [¶] The other, Amber, I don't know what happened there. The representation has been made that the mother had both addresses. All they had to do was ask her. It boggles the mind that this could have happened." The court stated, "I don't think good cause exists. I think the Department and the County Counsel for that matter had the names of these people and perhaps did not do their due diligence and did not have them available for trial. Today is the day of trial. And, again, these are not surprise witnesses."

The record supports the juvenile court's assessment. Based on DCFS's showing, the juvenile court was well within its discretion to conclude that DCFS had simply failed to make appropriate arrangements to secure the presence of two witnesses and that it had

4

not demonstrated good cause for a continuance.[2] DCFS had been on notice for two weeks that the hearsay testimony of the two half-sisters would be necessary, because at that time Luis S. had filed section 355, subdivision (c) objections to hearsay statements presented in DCFS reports. Yet from the showing DCFS made in court, it did not appear that DCFS had made diligent efforts to contact these essential witnesses. DCFS never asked A.V. for the contact information for her daughters. DCFS had been in touch with I.V., who lived in Northern California, and had obtained a statement from her, but had not asked for her address. Although clearly it had the ability to communicate with I.V. at all relevant times, DCFS did not obtain her address until the day before the adjudication. Accordingly, DCFS did not establish that it had made any prompt efforts to secure I.V.'s presence in court when the need for it became known. As far as Amber V., DCFS did not demonstrate that it had made serious or consistent efforts to contact her in advance of the hearing. The juvenile court asked counsel for DCFS about this: "And are these not things that are noted before the day of trial? The Department shouldn't have made arrangements to have at least the person that lives out of state transported here for her testimony?" Counsel for DCFS could only respond that the worker had been "trying to get an address" and that she did not know why A.V. had not been asked for her daughters' contact information. DCFS's showing fell short of demonstrating good cause for a continuance.

This case is unlike the cases relied upon by DCFS. In *In re John M.* (2006) 141 Cal.App.4th 1564, 1572, the juvenile court refused a continuance despite a showing of good cause; and in *In re Mary B.* (2013) 218 Cal.App.4th 1474, 1481, the language quoted by DCFS pertains to a request to reopen for the presentation of further evidence.

---

[2] Although the parties do not focus on the fact that the motion was made orally, we note that DCFS also did not show good cause to merit an oral motion for a continuance, as it made no showing of why it could not have filed a written motion two court days in advance of the court hearing. As of two days before the adjudication, DCFS knew the significance of the two half-sisters as witnesses, and it had not secured their attendance at the hearing—yet it did not make a motion for a continuance that was obviously necessary at that time if DCFS was to present a case that Maya S. was at risk of sexual abuse due to Luis S.'s alleged prior sexual abuse of her older half-sisters.

Neither situation is presented here. In *In re Hunter W.* (2011) 200 Cal.App.4th 1454 at pages 1460, 1464-1465, both parents had been present in the courthouse but had stepped out while the court proceeded with a lengthy morning calendar after counsel told father that he should come back for the afternoon calendar, yet the court refused to delay the proceedings for two hours until they could be located. The Court of Appeal found that the request to delay the proceedings while the parents were located was not a request for a continuance, and noted that even if it were to be considered a continuance request, such a brief delay could not be considered contrary to the child's interests. (*Id*. at pp. 1464-1465.) Here, DCFS was not asking for a case to be called later in the calendar the same day; it had made no arrangements to get the witnesses to court at any time, and it did not make any representations of when the witnesses would be available to testify. I.V., DCFS reported, did not drive, and she "was going to communicate with her boyfriend" to see if he would drive her to court. DCFS made no prediction of how long it would take to produce Amber V. as a witness. Such an open-ended delay, based on no showing of good cause, would not advance Maya S.'s interest in a stable environment or in the prompt resolution of her custody status with respect to her father. (§ 352, subd. (a).)

## II.    Request to Testify by Skype

DCFS asked the court to permit the half-sisters to testify by Skype in light of the denial of the continuance. Counsel for A.V. and Luis S. both objected to the use of Skype. The court declined to permit testimony by Skype based on a series of concerns, including, inter alia, that (1) DCFS's request was "a back door approach to asking me to continue this when we first started," (2) there was no evidence that the witnesses were even available, and available information indicated that at least one was not; and (3) counsel had not presented any authority for the use of Skype testimony.

The juvenile court did not abuse its discretion. There is no evidence in the record that the witnesses were available to testify by Skype at the time counsel made that request of the court. Counsel for DCFS had not made advance arrangements with the witnesses to ensure they would be available that afternoon to testify by Skype, and she could only

6

represent to the court that she could check to see if they were available to testify at that time. No information was provided to the juvenile court about whether I.V. could be reached to testify, and the only information about Amber V.'s availability came from A.V., who advised the court that Amber V. attended night school and therefore would not be available at that time. Because DCFS made no showing that it was prepared to offer the testimony it sought to present by Skype, the court did not abuse its discretion in declining to authorize Skype testimony and to further delay proceedings while counsel attempted to reach the witnesses.

DCFS argues that the refusal to grant a continuance obligated the court to accept testimony by Skype: "Because the juvenile court would not allow a continuance to obtain the physical presence of the witnesses, the court should have allowed virtual testimony." DCFS, however, has presented no authority authorizing such testimony in dependency cases, let alone requiring a court to permit it. There is no statute or court rule authorizing telephonic or Skype testimony in dependency court proceedings in California, and the only court of which we are aware that has considered such testimony in dependency court concluded that it was not an abuse of discretion to refuse to permit telephonic testimony where the proponent of that testimony had other methods of presenting the evidence. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1176.) As DCFS made no showing that it was unable to present the live testimony of I.V. and Amber V. rather than simply being unprepared to do so, *In re Nada R.* does not compel a different outcome here.

## III. Exclusion of Evidence

DCFS argues that the court erroneously excluded two pieces of evidence at the adjudication hearing. First, after a social worker testified using her notes to refresh her recollection, DCFS requested that the notes be admitted into evidence. Luis S. objected on the ground that the notes had not been provided ahead of time for review. The court concluded that it was unnecessary to admit the notes into evidence because their author had testified in person. Even if we assume that it was error to exclude these notes from

7

evidence, DCFS can establish no prejudice here because the social worker testified in person about the interview that was documented in the notes. DCFS has not identified any respect in which the social worker's testimony failed to provide information that would have been found in the notes.

Second, the court refused to accept a Last Minute Information for the court that was submitted at approximately 3:30 p.m. on the day of the adjudication hearing. This document contained Amber V.'s statement that Luis S. had molested and raped her when she was a minor; her expression of willingness to testify; and her representation that she lived in Virginia. The court said, "It is the same thing that we have already been discussing all day long that whether I[.V.'s] or Amber's statements come in, and this is the issue that has been raised from the minute we started this hearing. [¶] I don't feel it is appropriate to then throw a report out at us at 3:30 and expect us all to read it, not have objections, not have the person that wrote the report here, and have it part of the record. I don't think that is appropriate. [¶] I am respectfully denying the introduction of that Last-Minute Report." DCFS argues on appeal that it was prejudicial error to exclude this report because the information it contained "would have supported the prior requests for a continuance in order for the witness to testify." By the time this report was received by the court, however, it had already heard and ruled on the request for a continuance. Moreover, the information about Amber V.'s location, her willingness to testify, and the fact that she would be testifying about allegations that she was a victim of sexual abuse by Luis S. had already been provided to the court by counsel during the discussion of whether to grant a continuance. DCFS has not established any prejudicial error in refusing to receive cumulative evidence bearing on a request for a continuance that had already been denied.

8

## DISPOSITION

The judgment is affirmed.


                                        ZELON, J.

We concur:



PERLUSS, P. J.



WOODS, J.